Interim Decision #2052

MATTER OF SIRHAN, ET AL.

In Deportation Proceedings

A-10711879
A-13598200
A-13578469

*Decided by Board June 19, 1970*

(1) In deportation proceedings a collateral attack may be made on a criminal court judgment on the question of jurisdiction.

(2) Where an alien was charged with deportability under section 241(a)(4) of the Immigration and Nationality Act on the basis of a criminal conviction in California in 1966 for which he was sentenced for one year, with sentence suspended; thereafter the court by order modified the sentence to less than a year; and subsequently the conviction was expunged in 1969, the deportation proceedings are terminated on the basis of the expungement (which eliminates the conviction as a deportation ground) rather than as improvidently begun, since to a prospective employer or other person the latter may lend itself to the erroneous inference that proceedings were terminated as a matter of administrative discretion, rather than because the alien is not deportable.

(3) Since authority lies with the superior court of California, through the writ of *coram nobis*, to enter an order vacating an alien's prior conviction in that court of violation of California marijuana laws and certifying the case to the juvenile court, which accepted the alien as a ward, deportation proceedings against the alien under section 241(a)(11) of the Act are terminated since the conviction which formed the basis of deportability no longer exists, having been vacated.

CHARGES:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of violation of marijuana law.
[SIRHAN, RODRIGUEZ-RODRIGUEZ]

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime committed within five years after entry and sentenced to a year or more.
[TALAVERA-ARREDONDO]

ON BEHALF OF RESPONDENTS:
SIRHAN:
David C. Marcus, Esquire
215 West Fifth Street
Los Angeles, California 90013
(Brief filed in lieu of ao-
pearance at oral argument)

RODRIGUEZ-RODRIGUEZ:
Luis H. Garcia, Esquire
304 S. Broadway, Rm. 217
Los Angeles, California 90013

TALAVERA-ARREDONDO:
Agnes P. Matica, Representative
International Institute of
Los Angeles
435 S. Boyle Avenue
Los Angeles, California 90033

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney
(Filed brief in each case
and was heard in oral argu-
ment in SIRHAN)

Also, in SIRHAN, and
RODRIGUEZ-RODRIGUEZ:
William S. Howell
Trial Attorney
(Filed brief in each case)

Also, in TALAVERA-ARREDONDO:
Sam I. Feldman
Trial Attorney
(Filed brief)

These cases were tried separately before different special inquiry officers. Because the same issue is raised in each, we shall consider them jointly. We shall approve the special inquiry officer's termination of proceedings in each case.

These deportation cases are based on convictions which were subsequently changed or vacated by the courts in which the convictions occurred. The Service contends that the courts had no jurisdiction to enter the subsequent orders.

If the subsequent orders are void, the original convictions can serve as the basis for deportation orders except in Talavera's case where the conviction has been expunged. If the subsequent orders of the courts are to be given effect, the original convictions cannot serve as the basis for the deportation of Sirhan and Rodriguez.

In Sirhan and Rodriguez, we consider these questions: May we determine whether the courts had jurisdiction to enter the subsequent orders? If so, did the courts have the jurisdiction to enter them? If they had jurisdiction, are the aliens, nevertheless, deportable on the basis of the original convictions?

In Talavera, we consider these questions: Should the case be terminated, as requested by the District Director, on the ground that he improvidently started the case; or, as found by the special inquiry officer and is asked by counsel, on the ground that the subsequent order of the court eliminated the original order for deportation purposes? Should we terminate on the ground that the expungement eliminated the conviction for deportation purposes?

The individual cases will be briefly set forth. The special inquiry officer's orders state the facts fully.

Sirhan and Rodriguez were each separately convicted for violation of marijuana laws in a California superior court. Each was charged in deportation proceedings with being deportable by reason of his conviction. In each case, the court then vacated the conviction and certified the case to the juvenile court which accepted the alien as a ward. A person treated as a juvenile is not considered a person convicted of crime. The special inquiry officers held that the convictions on which the orders to show cause were issued no longer existed. They therefore terminated proceedings.

Talavera was convicted in a California superior court in April 1966 for issuing a check without sufficient funds. In May, he was sentenced to imprisonment for one year. The sentence was suspended. Deportation proceedings were instituted. In October, the court modified the sentence to make the term of imprisonment less than a year. The conviction was expunged in May 1969. The special inquiry officer terminated proceedings on the ground that the modified order removed respondent from the class of deportable aliens since he was no longer an alien sentenced to a year or more. The Service believes that the effect of the modified order is a moot question because the expungement has removed the conviction as the basis for deportation; but it asks that the deportation proceedings be terminated on the ground that they were improvidently begun.

The State of California was represented at the sessions of court when the changes in the court orders were made. The change in *Sirhan* was made by a judge other than the one who entered the original order. The changes in the other cases were made by the same judges who entered the original orders. In *Sirhan*, a motion to vacate was made by counsel. In *Rodriguez*, the court vacated the conviction on its own motion. In *Talavera*, the modification was apparently made as a result of a motion or recommendation by Talavera's probation officer or the oral motion of counsel.

### HAS THE BOARD THE POWER TO ENTERTAIN A COLLATERAL ATTACK ON THE JUDGEMENT OF A CRIMINAL COURT?

In determining whether an alien is deportable, the immigration authorities cannot go behind a judicial record to determine the guilt or innocence of the alien, *U.S. ex rel. Mylius* v. *Uhl*, 210 F. 860 (2 Cir., 1914). However, guilt or innocence is not involved

here. The question is the jurisdiction of the courts to change their orders. This is a proper and necessary issue for consideration in these proceedings, *U.S. ex rel. Freislinger* v. *Smith*, 41 F.2d 707 (7 Cir., 1930); *Joseph* v. *Esperdy*, 267 F. Supp. 492 (S.D.N.Y., 1966); *Doss* v. *State of North Carolina*, 252 F. Supp. 298 (M.D., 1966); *Vasquez* v. *Vasquez*, 240 P.2d 319 (Ct. App. Cal., 1952); *Matter of O'Sullivan*, 10 I. & N. Dec. 320 (BIA, 1963) ; *Matter of H*—9 I. & N. Dec. 460 (BIA, 1961); *Matter of C*—, 6 I. & N. Dec. 366 (BIA, 1954). See !RMatter of J—, 6 I. & N. Dec. 562 (AG, 1956). But see *Taran* v. *United States*, 266 F.2d 561 (8 Cir., 1959). The party attacking the judgment must establish the lack of jurisdiction by convincing evidence, *Pen-Ken Gas & Oil Corp.* v. *Warfield Natural Gas Co.*, 137 F.2d 871 (6 Cir., 1943), cert. denied 320 U.S. 800; *Choctaw & Chickasaw Nations* v. *City of Atoka, Okl.*, 207 F.2d 763 (10 Cir., 1953); *Delanoy* v. *Delanoy*, 13 P.2d 719 (Cal., 1932).

In *Sirhan* and *Rodriguez*, we shall consider the issue raised by the Service concerning the courts' power to change their orders. We shall not make the inquiry in *Talavera* because the expungement there moots the issue as to the validity of the court's modification. It is settled law that expungement of a non-drug conviction eliminates it as a ground for deportation. Use of the expungement is preferable to terminating the case as improvidently begun—an action, which, to a prospective employer or other person, may imply that deportation proceedings were terminated because the District Director exercised a discretionary power rather than because Talavera is not deportable. Since no hardship to Talavera is shown because we rely on the expungement rather than on the modified order, we see no need to explore the ramifications of the court's action in his case. See *Matter of Vizcarra-Delgadillo*, Interim Decision No. 1917 (BIA, 1968).

## POWER OF THE COURT IN CALIFORNIA TO MODIFY A CRIMINAL JUDGMENT

California criminal courts have statutory and inherent powers to modify orders. We will first consider the statutory power. Section 1203.3 of the Penal Code is cited by the special inquiry officers as authority for the courts' modifications. The provisions of this section follow:

§1203.3. [*Revocation, modification or termination of probation by court: Notice to probation officer: Discharge of defendant.*] The court shall have authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence. It may at any time when the ends of justice will be subserved thereby, and when

the good conduct and reform of the person so held on probation shall warrant it, terminate the period of probation and discharge the person so held, but no such order shall be made without written notice first given by the court or the clerk thereof to the proper probation officer of the intention to revoke, modify, or change its order, and in all cases, if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment, the defendant shall at the end of the term of probation or any extension thereof, be by the court discharged subject to the provisions of these sections.

We find that section 1203.3 continues the jurisdiction of the court over the convicted person only so far as conditions of probation and matter relating to probation are concerned. The section does not authorize vacating a conviction. These are our reasons: The section is found among provisions relating to probation. The heading of the section relates to changes of probation. All cases cited on the section concern judgments which involve matters relating to probation. The case of *In re Scarborough*, 173 P.2d 825 (Ct. App. Cal., 1946), held that under section 1203.3, a valid condition of probation must be present to justify a change of judgment. It would seem, therefore, that when probationary matters are not present, the section cannot be relied upon as authority for the change of a judgment. Finally, the changes of judgment expressly authorized by the section—changes involving imposition of execution of sentence—would hardly authorize *vacating* a conviction.

Since section 1203.3 relates to changes involving matters of probation, we must determine whether the change in *Sirhan* or *Rodriguez* involved a matter of probation. In both cases there were conditions of probation relating to service of time and obedience to the law. In addition, in *Sirhan* there were conditions concerning use of narcotics, associations, employment and residence. It is clear that in neither case did the court order vacating the conviction relate to a matter of probation. We conclude that the court could not have found authority for its action in section 1203.3.

We now consider the court's inherent powers to modify an order. There are two kinds, one short-lived, the other continuing. The short-lived one expires when the original order is entered in the minutes or when legal restraint has been imposed upon the defendant, *People* v. *Thomas*, 342 P.2d 889, 893 (Cal., 1959). Sirhan was convicted in October 1966 and sentenced in December 1966. The court orders were entered in the minutes in the same months they were issued. The court vacated the conviction and certified the case to the juvenile court in May 1967. Rodriguez

was convicted and sentenced on June 22, 1967. The order was entered in the minutes in the same month. The court vacated the conviction and certified the case to the juvenile court in February 1968. Since the modifying orders in both cases came after the original judgments were entered in the minutes, it would follow that the courts could not look to the short-lived power as authority for the modifications.[1]

The continuing inherent power to modify an order is exercised through the writ of *coram nobis*. The writ lies to vacate or correct a judgment where no other remedy exists. It is granted when a petitioner shows that, through no fault of his, a fact was not presented at the trial, that presentation of the fact would have prevented the rendition of the judgment, that the fact does not go to the merits of the issues tried, and that he could not, in the exercise of due diligence, have discovered the fact at any time substantially earlier than the time of his motion for the writ, *People v. Shipman*, 397 P.2d 933, 42 Cal. Rptr. 1 (1965). The petition for the writ need not take any particular form. See *People v. Hamlin*, 152 Cal. App. 2d 112, 312 P.2d 306 (Ct. App. 1957). It may be made orally, *People v. Curtis*, 104 Cal. App. 2d 219, 230, P. 2d 877 (1951); *People v. Sandoval*, 254 P. 893 (Cal., 1927). *Contra, In Re Dyer*, 85 Cal. App. 2d 394, 402, 193 P. 2d 69, 74 (1948).

We believe that it will be more fruitful to discuss the issues in terms of a specific court case rather than in terms of general rules. One Armendariz was convicted in May 1964 for a narcotic violation. The trial judge wanted to commit him to a rehabilitation program, but erroneously concluded that he could not ask the district attorney to declare the case an unusual one—a declaration which might have made Armendariz eligible for rehabilitation. The court sentenced Armendariz to imprisonment. He was apparently committed. In March 1966, he filed a petition for a writ of *coram nobis* in the trial court. The court denied the writ, apparently in part, because it was mistaken on the same legal point. On appeal, the trial court was reversed and given another

---

[1] In several unreported decisions, we had raised a question as to whether the limitation on modifications under the short-lived power might apply only to modifications that increased punishment. We now conclude that the limitation applies even if the modification decreases punishment. Thus, where after the entry of an order in the minutes, a court issued a corrected judgment beneficial to defendant in that it changed a term of imprisonment from a consecutive to a concurrent one, the corrected judgment was set aside because the issuance after the entry of the original sentence in the minutes was without authority, *In re Wimbs*, 421 P.2d 70, 55 Cal. Rptr. 222 (1966).

opportunity to consider the advisability of starting a proceeding to commit Armendariz to the rehabilitation program, *People* v. *Armendariz,* 60 Cal. Rptr. 796 (Ct. App., 1967). See also *In re Rascon,* 413 P.2d 678, 50 Cal. Rptr. 790 (1966).

While *Armendariz* is not on all fours with the cases before us, we see certain similarities. In *Armendariz,* the court acted without knowledge that it could have entered an order which would have saved Armendariz from imprisonment—a punishment the court did not want to inflict. The appellate court held that the trial court had the power to correct this omission. In the instant cases, the courses acted without knowledge that they could have entered an order which would have saved the respondents from deportation—a disability stemming from the punishment inflicted and not intended by the courts. It appears to us that the power to correct this omission existed. See *Joseph* v. *Esperdy, supra.* The existence of a case such as *Armendariz* and the Service failure to present precedents which affirmatively establish that the courts here were without authority require us to conclude that the Service failed to carry its burden in the collateral attack on the modifying orders in *Sirhan* and *Rodriguez.*

One further comment is required before we leave this subject. In *Talavera,* the Service presented a letter dated December 2, 1966 from the judge who modified his original order. He stated that he would not have imposed the original sentence had he known it might have resulted in an order of deportation, that making respondent subject to deportation was a penalty greater than was intended, that the modification was an attempt to alleviate the conditions of the original sentence, and that he now believes that he had no authority to enter the modification. The Service relies upon this letter as support for its position in the three cases before us. The letter is entitled to respectful consideration, but we do not regard it as substantial evidence that the superior courts in *Sirhan* and *Rodriguez* lacked jurisdiction to vacate their orders. Letters to similar effect were not presented in these cases which are under the administrative jurisdiction of the same District Director who submitted the letter in *Talavera.* The letter cites no authority. The court has not vacated the order in question.

Because our concern is with the convictions which were the basis for the issuance of the orders to show cause, we need not discuss statutory provisions relating to acquisition of jurisdiction by the juvenile court.

## EFFECT OF THE ORIGINAL CONVICTIONS UNDER THE IMMIGRATION LAWS

We come now to the third question in *Sirhan* and *Rodriguez*. Did the subsequent orders of the courts remove the aliens' liability to deportation? The Service contends that because the orders were allegedly made for this very purpose, to give them such an interpretation would circumvent federal laws controlling the deportation of aliens. A similar contention was vigorously advanced by the Service in *Matter of O'Sullivan, supra.* It was rejected by the Board. We find no need to add to the discussion there. See *Joseph* v. *Esperdy, supra.* We do point out that while the inference can be drawn that the courts here were motivated by a desire to remove the aliens from liability to deportation, it is possible that other considerations entered into their deliberations.

Pointing to the fact that a conviction (the finding of guilt) exists independently of a sentence (the imposition of punishment), the Service representative contends that the vacating of a sentence has no effect on the existence of the conviction and permits the conviction, where it is for a narcotic offense, to support an order of deportation under section 241(a)(11) of the Act. It is sufficient answer to say that in *Sirhan* and *Rodriguez,* where narcotic violations occurred, the courts vacated the convictions; no convictions exist.

The appellate trial attorney contends that the courts' actions in vacating the convictions in *Sirhan* and *Rodriguez* are unconstitutional because the actions subject the aliens to double jeopardy. The contention must be dismissed. An accused in a criminal case who is instrumental in having a conviction vacated may be tried again on the same, or another indictment, for the very offense of which he was convicted without violaing the provision against double jeopardy, *People* v. *Stratton,* 28 P.2d 695 (Ct. App., Cal., 1934). This is so even if the accused has served time under his sentence, *U.S. ex rel. Jones* v. *Nash,* 264 F.2d 610 (8 Cir., 1959), cert. denied 360 U.S. 936. Moreover, since the proceedings were remanded to the juvenile courts, which are not criminal courts, the doctrine of double jeopardy does not apply, *People* v. *Silverstein,* 262 P.2d 656 (Cal., 1953).

Cases dealing with expungements cited by the Service in *Sirhan* and *Rodriguez; e.g., Garcia-Gonzales* v. *INS,* 344 F.2d 804 (9 Cir., 1965), cert. denied 382 U.S. 840, are inapposite. Expungement is a State rehabilitation process which removes most of the disabilities imposed by the State on a convicted person. In *Sirhan* and *Rodriguez,* no convictions exist.

Since neither a pardon nor recommendations against deportation are involved in the instant cases, we shall not discuss the cases concerning these matters which are cited by the Service.

Other cases cited by the Service; *e.g., Guiterrez v. INS*, 323 F.2d 593 (9 Cir., 1963), cert. denied 377 U.S. 910 (dictum) contain statements that a federal standard exists as to what constitutes a conviction. We agree with this. We have attempted to define such a standard, *Matter of O—*, 7 I. & N. Dec. 539 (BIA, 1957). There is, however, no authority holding that a conviction exists where there is no finding by a criminal court that a person is guilty of a crime. On the contrary, when a court acts within its jurisdiction and vacates an original judgment of conviction, its action must be respected, *Sakow v. INS*, 314 F.2d 34 (3 Cir., 1963); *United States v. Shapiro*, 222 F.2d 836 (7 Cir., 1955), interpreted in *Matter of S—*, 9 I. & N. Dec. 678 (BIA, 1962). See *Pino v. Landon*, 349 U.S. 901 (1955).

**ORDERS:** (1) No change is made in the special inquiry officers' orders in *Sirhan* and *Rodriguez;* (2) No change is made in the special inquiry officer's order in *Talavera*. The basis for termination of deportation proceedings is the fact that the conviction on which proceedings were instituted was expunged.